**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 06-137-JBC**

**GENEVA JOHNSON,**                                                                     **PLAINTIFF,**

**V.**                               **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

The plaintiff, Geneva Johnson, brought this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of an administrative decision of the

Commissioner.  On cross-motions for summary judgment (DE 13, 15), the court

referred this matter to United States Magistrate Judge James B. Todd, who

recommended that the plaintiff's motion for summary judgment be denied and the

Commissioner's motion for summary judgment be granted (DE 17).  The plaintiff

filed objections to the Magistrate Judge's recommendation (DE 18).  The court,

having reviewed the record *de novo* in light of those objections, will adopt the

Magistrate Judge's recommendation (DE 17), deny the plaintiff's motion for

summary judgment (DE 13) and grant the Commissioner's motion for summary

judgment (DE 15).

**I.      Background**

The plaintiff alleges that she became disabled on June 1, 1993, due to back,

neck, and ankle injuries, hepatitis B & C, bladder problems, depression, and anxiety.

*See, e.g.*, DE 13-2 at 2.  The plaintiff's most recent application for benefits, from which this appeal is ultimately taken, was filed on February 13, 2003.[1]  A formal hearing on this application was held before an administrative law judge ("ALJ") on September 14, 2004, in Hazard, Kentucky.  The ALJ denied the plaintiff's application on July 5, 2005, a decision which was upheld by the Appeals Council, and the plaintiff then filed this application for judicial review.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards.  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *Id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even if the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 286.

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at

---

[1]  Previously, the plaintiff filed an application for disability benefits which was granted on September 25, 1995.  On December 1, 1999, due to medical improvements, the plaintiff's disability benefits were stopped.  The plaintiff disagreed with this decision, but her request to reinstate benefits was denied.

Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform her past relevant work, whether significant numbers of other jobs exist in the national economy which she can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.     The ALJ's Determination

At the beginning of his decision, the ALJ concluded that a finding of "onset of disability" prior to March 23, 2001, the date of the prior decision denying the plaintiff's request to reinstate benefits, was precluded by res judicata. (R. at 22.) At Step 1, the ALJ found that the plaintiff has not engaged in substantial gainful activity since March 23, 2001. *Id.* At Step 2, the ALJ found that the plaintiff "has anxiety disorder, lumbar and cervical disc disease, and history of hepatitis, impairments that are 'severe' within the meaning of the Regulations"; however, at Step 3, the ALJ found that none of the plaintiff's impairments "meet[] the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 CFR 404, Subpart P, Appendix 1)." *Id.* at 24-25. At Step 4, the ALJ found that the plaintiff's limitations prevent her from returning to her past relevant work as a

cleaner and a packer, and the ALJ further found that the plaintiff "has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." *Id.* at 26.  At Step 5, the ALJ found that despite her limitations, the plaintiff "retains the residual functional capacity for a significant range of light work" available in a significant number of jobs in the state and national economy such as a ticket taker, companion or sitter, and general office clerk. *Id.* at 25-27.  Therefore, the ALJ concluded that the plaintiff was not under a disability, as defined in the Social Security Act. *Id.* at 27-28.  The ALJ also found that the record does not support the plaintiff's "testimony regarding the intensity and persistence of her symptoms"; in fact, the ALJ found that "the record reflects that the claimant has overstated the severity and frequency of her symptoms and limitations." *Id.* at 25.  Therefore, the ALJ gave the plaintiff's "subjective allegations little weight in determining her residual functional capacity." *Id.*

### III.   Analysis

The plaintiff claims that the ALJ erred in failing to give controlling weight to the opinions of her treating physicians, relying instead on non-examining medical assessments and consultative examiners.  The plaintiff also claims that the ALJ erred in directly assessing her hepatitis C condition, as well as her alleged mental impairments.  Therefore, she argues, the ALJ's decision should be reversed because it is unsupported by substantial evidence.

The Magistrate Judge rejected the plaintiff's arguments and concluded that the ALJ's decision was supported by substantial evidence.  He recommended that the plaintiff's motion for summary judgment be denied, that the defendant's motion for summary judgment be granted, and that this matter be dismissed and stricken from the court's docket.

In a twenty-page objection (DE 18), the plaintiff argues that the Magistrate Judge has also erred, and she urges this court not to adopt the Magistrate Judge's recommendation.  Only the first four pages of this response relate to the Magistrate Judge's report and recommendation – the remaining sixteen pages appear to be an identical copy of her memorandum in support of her motion for summary judgment, albeit with the font changed, and with roughly the first four pages single-spaced. These additional pages in the plaintiff's objection satisfy neither the letter nor the spirit of the Federal Magistrates Act.

The Federal Magistrates Act provides that "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge . . . shall make a de novo determination of *those portions of the report or specified proposed findings or recommendations to which objection is made*."  28 U.S.C. § 636(b)(1) (emphasis added).  The portion of the plaintiff's objection which merely duplicates the plaintiff's earlier memorandum in support of her motion for summary judgment does not identify any part of the Magistrate Judge's Report that she believes to be erroneous.  Rather, it is – at best – simply

an objection to the entirety of the Magistrate Judge's conclusions.  The Sixth

Circuit has previously found such "general objections" to be unavailing:

> A general objection to the entirety of the magistrate's report has the
> same effect as would a failure to object.  The district court's attention
> is not focused on any specific issues for review, thereby making the
> initial reference to the magistrate useless.  The functions of the district
> court are effectively duplicated as both the magistrate and the district
> court perform identical tasks.  This duplication of time and effort
> wastes judicial resources rather than saving them, and runs contrary to
> the purposes of the Magistrates Act.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991);

*see also Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) ("[A]n objection

stating only 'I object' preserves no issue for review.").

When parties to an action do not object to the Magistrate Judge's report, the

district court may give deference to the Magistrate Judge's recommendations.

*Thomas v. Arn*, 474 U.S. 140 (1985).  Therefore, with respect to the bulk of the

plaintiff's objections, the court will give deference to the Magistrate Judge's report

as if no objection had been filed thereto.  Only the plaintiff's new arguments,

specifically relating to the Magistrate Judge's report and recommendations, will be

discussed below.

### A.     The Plaintiff's Treating Physicians

According to the plaintiff, both "the Commissioner and then [the] U.S.

Magistrate's Proposed Findings of Fact and Recommendation failed to recognize

essentially uncontradicted opinions of Claimant's treating physicians should be

entitled to complete deference."  (DE 18-1 at 1 (citing, inter alia, *Cohen v. Sec'y of*

*Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992)).)  More specifically, the

plaintiff claims that both the ALJ and the Magistrate Judge ignored "essentially

uncontradicted pronouncements" about the severity of her impairments from Drs.

Gilbert and Nazir, her treating physicians, along with corroborating medical evidence

including "two back surgeries as well as a surgical sling repair for her urinary

incontinence."  (DE 18-1 at 1-2.)  Contrary to the plaintiff's claims, the Magistrate

Judge did not ignore the opinions of Drs. Gilbert and Nazir; in fact, the Magistrate

Judge devoted an entire section of his analysis to the "Weight given to the opinions

of Dr. John W. Gilbert and Dr. Tariq Nazir."  (DE 17 at 4-6.)  After a de novo

review of the plaintiff's argument and the record, including the opinions of Drs.

Gilbert and Nazir, the court reaches the same conclusions expressed by the

Magistrate Judge.

     Ordinarily, the opinion of a treating physician is entitled to great weight when

it is "supported by sufficient clinical findings and . . . consistent with the

evidence"; however, such opinions are not necessarily binding, "especially when

there is substantial medical evidence to the contrary."  *Cutlip*, 25 F.3d at 287

(citing, inter alia, *Cohen*, 964 F.2d at 528).   Neither Dr. Gilbert nor Dr. Nazir ever

stated that the plaintiff was either unable to work or totally disabled; in fact,

neither doctor made any statements whatsoever about her ability to work.  *See,*

*e.g.*, R. at 201-05, 363-77.  Moreover, the ALJ did not ignore the findings of these

doctors about the plaintiff's limitations; he expressly discussed Dr. Gilbert's

findings as well as the plaintiff's record from the time she was treated by Dr. Nazir, and he incorporated their opinions about the plaintiff's medical condition into his assessment of the plaintiff's residual functional capacity. *See* R. at 24, 24-27. Accordingly, the court concurs with the conclusion of the Magistrate Judge and finds that the ALJ did not err in considering the opinions of the plaintiff's treating physicians.

### B.    The Plaintiff's Hepatitis

According to the plaintiff, Hepatitis C is "a very serious disease which behaves somewhat strangely inside the human body." (DE 18-1 at 2.) Once "an individual is infected with Hepatitis C, the virus lies dormant inside the infected individual for a period of time," then, "[i]f the condition is untreated, the virus always 'awakens' at some point from the dormant phase and moves into the active phase." *Id.* at 2. Once the disease becomes active, "[t]he individual has a lot of nausea, vomiting and diarrhea, and the individual's food does not taste right." *Id.* at 2-3. Although the plaintiff provides no citation or reference, the court will accept her general and uncontradicted description of Hepatitis C as broadly accurate.

According to the plaintiff, "the obvious question" posed by the medical evidence in this case "is whether her Hepatitis C is in the process of changing from the dormant phase to the active phase." (DE 18-1 at 3.) She also claims that neither Dr. Burns nor Dr. Anderson, both of whom provided consulting opinions

8

about the plaintiff's condition upon which the ALJ relied, ever "considered this possibility of an active Hepatitis C condition becoming manifest" in their reports. *Id.* This claim is simply incorrect: both Dr. Burns and Dr. Anderson discussed the clinical significance and the potential limitations of the plaintiff's hepatitis. *See, e.g.*, R. at 380, 388-89. Accordingly, the court will not consider this unfounded objection at any greater length.

### C. The Plaintiff's Anxiety and Depression

Finally, the plaintiff briefly argues that her "anxiety and depression, which was rated at least moderate by the SSA's own consultative psychologist, Dr. Rigby, or worse by her treating sources," was "not fully considered but largely dismissed by both the Commissioner and the U.S. Magistrate Judge." (DE 18-1 at 3.) Again, this descriptive claim is incorrect: both the Magistrate Judge and the ALJ considered the plaintiff's alleged anxiety and depression, and both expressly considered Dr. Rigby's opinion. *See* DE 17 at 7-8, R. at 23. More specifically, the ALJ noted that "Dr. Rigby's diagnosis was anxiety disorder, not otherwise specified[,]" and that "Dr. Rigby assessed claimant with good ability to understand" and to follow "simple instructions; good ability to sustain attention with repetitive tasks; good ability to relate to others, such as fellow workers and supervisors; and fair ability to adapt or respond to the stress and pressures normally found in a day-to-day work setting." (R. at 23.) Because the plaintiff has not shown how this detailed, specific consideration of the objective medical evidence about her alleged

9

anxiety and depression was insufficient, the court will not consider this objection at any greater length.  Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Proposed Findings of Fact and Recommendation (DE 17) is **ADOPTED** as the opinion of this court.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 13) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (DE 15) is **GRANTED**.

Signed on July 3, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

10